Good morning. May it please the Court, my name is Alex Kleinberg and I represent the appellant in this case for Citizens Bank & Tr. Co. I'd like to reserve three minutes for rebuttal. This appeal arises from Chapter 7 debtor Debra Wilson's failure to disclose in her bankruptcy schedules the only two transfers of real property she made within two years of filing her bankruptcy  She was asked about this at the creditors' meeting, wasn't she? That's correct, Your Honor. The trustee, Jim Rigby, did ask her about that. And she answered truthfully? Not initially, Your Honor, no. What did she say? The trustee had asked her if all the transfers she'd testified about had been disclosed, and she said, yes, but that was not truthful. These transfers had not been disclosed in the original Statement of Financial Affairs. During the course of the creditors' meeting, did she disclose the transfers we're concerned about? Yes, she did, but only after I, on behalf of the bank. The answer to my question is yes. That's correct, Your Honor. And did she amend her schedules? Subsequently, yes, she did. Go ahead. Thank you. These two transfers at issue, they concerned a tenanted commercial property in Kennewick, Washington, and a rental home the debtor had in Everett, Washington. These were the only two transfers of property, real property, the debtor made within two years of filing the case. The question, of course, is whether these transfers were outside the ordinary course of the debtor's business or financial affairs as required by the Statement of Financial Affairs. Any non-ordinary course transactions, of course, must be disclosed. And really, the meaning of the word ordinary, I believe, has particular significance in this case. As the Court's seen from our brief, ordinary has been defined as irreputable dictionaries, meaning regular, customary, usual, or normal. And the bank submits, there's nothing regular, customary, usual, or normal about these two transfers. Wasn't a whole lot customary or usual about the real estate business in 08-09, was there? Perhaps not, Your Honor, but importantly, one point we take issue with the District Court on is that there's nothing in the Bankruptcy Code, there's nothing in applicable bankruptcy case law that requires the Bankruptcy Court to look at the particular economic situation at the time the transfers were made. And so— This is on a grant of summary judgment, and the District Court concluded that the Bankruptcy Trial Court, that assessing the facts in the light most favorable to the non-moving party, which is Ms. Wilson, correct? Yes. There were material issues of triable fact, and there ought to be a trial. That indeed, Your Honor, is the District Court's position. And what's wrong with that? We submit that—the standard of proof here, of course, is not beyond a reasonable doubt. This is not a criminal case, and we submit that while the debtor is entitled to justifiable inferences on summary judgment, she's not entitled to inferences that are not justifiable. And in this case, for the debtor to prevail, she had to meet both the horizontal dimension test and the vertical dimension test that I believe has been thoroughly briefed here, and she's not done that. The Bankruptcy Court was right to realize, for instance, there's no evidence of similar transactions in the record. There's no evidence, for instance, that the debtor had in the past engaged in a 1031 IRS tax exchange with her attorney. This is the only time apparently that was ever done. There's also no evidence in the record to the effect that the debtor had ever transferred a tenanted commercial property by way of a deed in lieu of foreclosure to a friend of hers. And the debtors testified, at least to some extent, that she didn't get any contemporaneous money or value in exchange for these transfers. What about that there was one statement the Bankruptcy Court made basically to the effect of that she had a pretty good argument that these were in the ordinary course? That to me sort of flags the question of, is there this material issue of fact? If she has a pretty good argument, why doesn't that raise an inference that would need to go further than summary judgment? Your Honor, I spent a good amount of time reviewing the transcript of the summary judgment proceeding, and I remember it well. And our reading of the transcript is not that the Bankruptcy Court implied that, that it made that implication. It was that it framed this issue. I believe it began with whether or not the debtor's got a pretty good argument is an issue I'll consider at trial. So it didn't look to us like the Bankruptcy Court was implying anything here. One thing that I wouldn't... You're saying that that's an issue you'd consider at trial sounds antithetical to summary judgment. Your Honor, even if that point is correct, we do believe the Bankruptcy Court, at the end of the day, reached the proper result here, which is it determined, of course, as a matter of law, that neither this horizontal dimension test had been met, nor had the vertical dimension test been met as well. I have a question that's sort of been intriguing me since I read this case. You both are bankruptcy lawyers? That's correct, Your Honor. That's your regular practice? Yes, that's correct. If this goes back, is it a jury trial? I don't believe so, Your Honor. I want to say that it could only... Why not? I want to say it could only be a jury trial if both parties consent. I think that's the current state of the law, so I guess potentially it could be, potentially. Why wouldn't you consent to a jury trial if that's the law? I'm not sure the Bank would or would not, Your Honor. I don't believe we've had those discussions. We haven't got to that point yet. How long have you been practicing bankruptcy law? About 14 years, Your Honor. And I assume your opponent a little longer? Just a bit. Have you ever seen a jury trial in bankruptcy court? No, I haven't. Have you ever tried a jury trial? Yes. In bankruptcy court? No, in state court, Your Honor. Okay. Go ahead with your argument. I'm just curious about that. You seldom see this where there at least is an opportunity for a jury trial in bankruptcy court. So it's interesting. Go ahead. Sorry to interrupt you. Not a problem. Thank you. As a bankruptcy practitioner, one point I want to take a moment just to emphasize is that the full, complete, and accurate disclosure in bankruptcy of one's assets and recent transfers of property, it's extremely important. The system cannot operate the way it's supposed to operate without full and fair disclosure by the debtor. And the bankruptcy code specifically requires debtors in bankruptcy to do a number of things. They have a number of affirmative obligations, like being honest and forthright in their bankruptcy schedules, like cooperating with the trustee in the event a trustee is appointed to supervise the case, like in some cases completing a certificate of credit counseling in order to get their discharge in bankruptcy. And these are serious obligations. Complete disclosure to creditors, to bankruptcy trustees, to the office of the United States trustee, it's extremely important. It's necessary for the complete and fair administration of bankruptcy cases. And a debtor's failure to fully and completely list their assets in pre-bankruptcy transfers of property can be highly prejudicial to the debtor's bankruptcy estate. Mr. Kleinberg, I'm going to interrupt you. You had said that she had never had a previous transaction with her attorney. I was reading that perhaps he had purchased five residential properties from one of her companies in the mid-'80s as part of another 1031 exchange. Yes, Your Honor. As I recall, the attorney, Mr. McKinney, testified he previously had some dealings with the debtor's companies, but not in her personal individual capacity. Okay. So that's the distinction you're making. So she had done it in the past, but just not with her individually. There is evidence in the record that she had done that in the past, but that's correct. It was not in her individual capacity. So it's kind of never? I beg your pardon? So it's kind of never? I believe that's correct, yes. Okay. Importantly, from our point of view, the district court erred in this case also by not specifically addressing the issue of whether a hypothetical creditor, not an actual creditor like my client, the bank, but whether a hypothetical creditor would be on notice that the debtor would be transferring her only two pieces of investment property within two years of filing of the case. And that's important because that bears on this vertical dimension test. And the bankruptcy court, Judge Mark Brekka here in Seattle, we believe correctly noted that a hypothetical creditor or even an actual creditor like the bank would not be on notice of these two transfers, which in our view again shows they're not ordinary course transfers and they should have been disclosed in the first place. Can I ask you a question about that now? After the initial denial during the creditor's meeting and then the acknowledgement that there had been these two transfers, she then amended her schedules, correct? Yes, that's correct. And provided in discovery information about each of the transactions? Yes, that's correct. Okay. How did you propose to prove that she acted with the intent to hinder, delay, or defraud a creditor? Well, from our point of view, the fact that these transfers were not originally disclosed and the debtors got able and experienced bankruptcy counsel here, it says something. It says something about her intent and they were not initially disclosed at the meeting of creditors where she testified essentially, these are all the transfers that are in the schedules here. I have nothing more to add. Oh, but the bank's attorney is here. Now the bank's attorney is saying there's these other transfers. Now I'll admit to them. You're not suggesting that her counsel was somehow complicit in this, are you? Oh, goodness. Not at all, Your Honor. No. What I'm suggesting, perhaps even stating, is our view and belief that the debtor was not forthright with her attorney the way she should have been. How do you know that? That's what I would call the reasonable inference that I'm just drawing from the facts of the case. Okay. You understand we cannot draw that inference. Our law requires us to take all inferences in favor of the non-moving party. So that inference is off the table. Reasonable justifiable inferences, Your Honor. She is entitled to that. We'll acknowledge that. Okay. So we submit it's legally insignificant that at the end of the day, after these transfers were brought to her attention, the debtor amended her schedules to disclose them. That's not the way it works. If not for a vigilant, sophisticated creditor like my client that's owed approximately $7.6 million here, that hired my firm and me to come in and represent its interests in this case, those transfers would not have been disclosed. We're the only active creditor in this case. The trustee... So let me try to get the legal import of that, though. That was bad of her not to disclose them. But then she did disclose them. So how does that answer the question of whether they were... There's no factual question about whether these were in the ordinary course. I beg your pardon? How does that answer the question of whether these are in the ordinary course? I mean, the fact that she didn't disclose and then she did disclose. Well, I see it really as being two different issues. She was required to disclose the transfers in the first place. Sure. And she didn't. Correct. But then she did. But... And I realize she... Your view is, of course, but for you, they wouldn't have been on the table. But that doesn't really answer the ultimate question, does it? It just sort of colours our view of her in some way, but it doesn't answer the ultimate question. I think that's correct. I think we're looking at two different issues here entirely. Regardless of when she disclosed and what she disclosed, we have to look at the nature of the transfers themselves. That's really what's at issue here. And even if the court ultimately concludes one or both of the transfers should have been disclosed, and even if the court... How should I say? Reinstates the bankruptcy court's summary judgment ruling to some extent, that's hardly the end of it. We still have to go to trial and prove fraudulent intent, as the court's aware. I also want to mention, too, there is some evidence on the record to the effect that after the debtor conveyed this Kennewick property, the tenanted commercial property in Kennewick, Washington, to her friend by way of a deed in lieu of foreclosure, she testified in the companion case filed by the U.S. Trustee's office that she later sold the property for $360,000 after she tendered a deed in lieu of foreclosure to it. And this fact shows up also in her sworn deposition testimony and her 2012 federal income tax return. This is part of the record, specifically at ER 159 and ER 304. So one more reason we think this Kennewick transfer was out of the ordinary course is that on the one hand, the debtor is testifying. She gave a deed in lieu of foreclosure to the property, so title passed at that time. But then she's testifying under oath that, well, she actually sold the property and got a gain, and that's spelled out in her federal income tax return as well. So I'm not sure what exactly happened here, but if nothing else, this reflects this is not an ordinary situation. I'm not sure what happened. Sounds like a trial. Not in this case. To this old trial lawyer. I just don't see it that way, Your Honor. I do believe that Judge Borreca got it right when he said there's just really no genuine issue of material fact here and that the debtor is required by Ninth Circuit law to submit significant and probative evidence in response to the bank's motion for summary judgment. I believe it's the Intel case that holds that's the threshold, the evidentiary threshold that's needed to overcome summary judgment, and we submit Judge Borreca got it right and that she didn't do that here. I also want to conclude for now by noting that one more reason we believe this Court should reinstate the Bankruptcy Court's ruling is because of the timing of the two transfers, and we submit that's highly suspicious because the debtor did not start transferring these properties away until after the bank filed a lawsuit against her, ultimately two lawsuits, for the recovery of about $7.6 million. And given that the debtor has testified, she transferred these properties to her friend, her attorney, for no direct consideration in exchange, and she did that after the bank started pursuing her for all this money. It suggests to us that she wanted to protect the property by transferring it to her friend and her attorney, friends in confidence. And so we do believe this Court can and should rightly take the timing of these transfers into account as well. Unless the Court has any further questions for me, I think I'd like to reserve my remaining time. Thank you. Good morning, Your Honors. And Judge Hawkins, you're just a smidgen older than me. When I started practicing bankruptcy law 44 years ago, the bankruptcy courts were in the basement of this building, and of course they were referees at the time, and they weren't judges, but they were referees, and I used to go downstairs. I was a Panel 7 trustee. They didn't have Panel 7 trustees, not until 78. So I was a trustee to Judge Freeman, and down in this building, which has been nicely remodeled. I'm also glad you focused on the fact this is a summary judgment motion. In other words, are there any contested material issues of fact that would require trial in this matter? Judge Kornhauer said literally there were seven declarations filed by the debtor, the debtor's banker, Mr. Rogers, the debtor's real estate broker advisor, Mr. Greenhall, Ms. Wilson herself, the business associate in the Chateau de Ville project that caused this whole problem, Mr. Clevis, the purchaser, Mr. McKinney of the Everett property, the lender, Ms. O'Neill, on the deed in lieu of foreclosure, and the developer broker, Mr. Meek. And Judge Kornhauer said any one of those standing alone, which were uncontested and unrebutted, creates material issues of fact. He didn't know why it wasn't resolved. Just pick one, and they created a material issue of fact. And as the court just pointed out a minute ago on summary judgment, if there isn't a material issue of fact and the court has to look at all these declarations as though they were true and uncontested and they are unrebutted, sometimes summary judgment can backfire. If you're saying to the court there are no material issues of fact and then we have to take all these declarations as true and that Ms. Wilson, look at the facts, Ms. Wilson was a real estate broker, developer, investor for over 30 years. She invested in over $30 million in various projects. She's done over five Section 1031 exchanges. Well, clearly the rule permits a judge like in the position of Judge Kornhauer where one party moves for summary judgment but the other party doesn't, but responds to rule in favor of the opposing party. He did not do that here. No, I know, but what I'm pointing out is the facts that are then uncontested create the issue that I think one of the cases that were cited is a widget manufacturer isn't in the business of selling a rental home. But Ms. Wilson, what I was trying to point out, Ms. Wilson is in that business. So she was an investor and a developer and she did do tens of millions of dollars in projects. As the facts have been pointed out, she was a licensed bonded contractor. She had owned over . . . It's a pretty simple case. Yes or no, is there a disputed issue of fact? Because she put in evidence and the district court said, yeah, well, I look at this and I have all these disputed issues of fact and I rule this way. So I'm not quite sure why, again, why you're arguing, well, it can backfire, etc. The evidence will be what it is at trial, right? Yes. One way or the other. If it goes to trial, that will be what? Will be ruled on when testimony is taken and the court views the witnesses and the credibility of the witnesses and all the normal . . . No more inferences at that point. Yes, on the normal test. Is your opposing counsel correct that a jury trial in bankruptcy court would require the consent of both parties? I just don't know the answer to that. He seems to know what he's talking about. The question is, no, this is a 727 action. It's a core proceeding. So a 727 being a core proceeding doesn't require consent. You're involuntarily stuck in the bankruptcy court because this is a determination of whether the debtor should be granted a discharge in this case or not. It's an all or nothing case. In district court, if you want a jury trial, you have to file a separate pleading early on in the case demanding one. Is that true in bankruptcy court? You're not entitled to a jury trial in a 727 action. Okay. So, unfortunately, if this was a 523 action, which is dischargeability of a specific debt, in other words, if the bank had commanded . . . Then you might have a right to jury trial. Yeah, 523 and said, Ms. Wilson obtained this $10 million loan by fraud. I'm sorry to have diverted learned counsel on the issue that intrigued me. Yes. 727 is not a jury because it's . . . And by learned, I mean both counsel. Accordingly, I think, you know, we could spend more than nine minutes and 40 seconds talking about the horizontal test and the vertical test and this test and that test. I think they're well briefed by everybody. We briefed them. They briefed them. Judge Kornhauer . . . Then why argue further? Pardon? Then why argue further? Well, that's . . . I was getting to the point where I was going to ask the court if the court had anything that it had questions on because sitting here for nine minutes and 14 seconds now talking about vertical test and horizontal test, first of all, it would take way too long, and they're very complicated, lots of case law on it. Judge Kornhauer, I think, very well . . . Sometimes you quit while you're ahead. And I don't know that I need to repeat it unless the court had some other questions. Thank you. No. No? Okay. Thank you. I want to first just comment briefly on these declarations that the debtor submitted in support of her position in the bankruptcy court. And in my experience, oftentimes practitioners think there's automatically safety in numbers when it comes down to submitting multiple declarations and affidavits in support of their position. This is not a case where that's true, though. Judge Barreca rightly honed in on the fact that despite these numerous declarations, there's no evidence that the debtor herself had ever deeded a property in lieu of foreclosure or that she was in the business of IRS 1031 exchanges, let alone IRS 1031 exchanges with her attorney, who apparently was representing her at the time of this transfer. There's also no evidence in the record to the effect that the debtor herself or her attorney, Mr. McKinney, engaged in IRS 1031 exchanges with similarly situated parties prior to the McKinney transfer of the Everett rental home. Again, I'd like to just briefly emphasize, because I do believe it's important, there were only two transfers of investment properties within two years of filing the case. That, of course, equates to one per year. There's nothing ordinary, customary, or usual about these transfers for many reasons, but one is because of the timing of them. It's not like this was a monthly sort of thing, for instance, or a quarterly thing. Lastly, as we ask this court to reverse the district court, reinstate the entry of summary judgment in the bankruptcy court, we'll state again, as I think this panel is well aware, is that that doesn't end the case. The debtor still gets her day in court, whether it's in front of a jury or the judge, and this case, one way or the other, will culminate in a trial, but we submit that this court can and should narrow the scope of issues for trial by reinstating Judge Burek's ruling. Thank you. Thank you. Thank both counsel for your argument this morning. The case just argued of First Citizen v. Wilson is submitted and we're adjourned for the morning.
judges: Hawkins, McKeown, Foote